IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GAVIN MCINTIRE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00174-P |
| | § | |
| BNSF RAILWAY COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Plaintiff Gavin McIntire filed the instant civil action against Defendant BNSF Railway Company—his former employer—for BNSF's alleged violations of the Family and Medical Leave Act ("FLMA") and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"). ECF No. 1. Now before the Court are competing motions for summary judgment (ECF Nos. 44, 47), responses (ECF Nos. 50, 52), and replies (ECF Nos. 54, 55). Having considered the motions, responses, and replies, briefing and appendices, as well as the applicable law, the Court concludes for the reasons set forth below that McIntire's Motion for Partial Summary Judgment should be **DENIED** and BNSF's Motion for Summary Judgment should be **GRANTED**. Accordingly, McIntire's claims should be and hereby are **DISMISSED with prejudice.**

## BACKGROUND

**A.   McIntire's Employment with BNSF and the Rules Governing His Employment**

McIntire was employed by BNSF as a mechanical carman for fifteen years until January 2019. BNSF's MSJ Resp. App'x at 87, ECF No. 51. During his time at BNSF,

McIntire was a union employee in the mechanical department and as such was subject to a collective bargaining agreement ("CBA") between the union and BNSF. Undisputed Fact 1, ECF No. 45 at 14, Admitting Undisputed Fact 1, ECF No. 52 at 6. It is undisputed that pursuant to the CBA, McIntire was subject to BNSF's Mechanical Attendance Guidelines ("Attendance Guidelines"). *Id.*; BNSF's MSJ Resp. App'x at 1–2.[1]

Under the Attendance Guidelines, an employee is subject to formal discipline when his absences become excessive. BNSF's MSJ App'x at 88–89 (Decl. of Erik Velasco at ¶¶ 3, 5), ECF No. 46. It is undisputed that McIntire was subject to BNSF's Mechanical Safety Rules. Mechanical Safety Rule 28.14 provides that BNSF's mechanical shop craft employees (which includes carmen) must report for duty at the designated time and place. *Id.* at 89. When an employee's attendance indicates a pattern of excessive absenteeism, that employee receives an investigation notice of alleged absenteeism in violation of Rule 28.14. *Id.* The employee is given an opportunity to challenge the notice and have a hearing or request a waiver and accept discipline. *Id.* The Attendance Guidelines provide the following disciplinary action for excessive absenteeism during a 12-month rolling period: a formal reprimand for the first violation; a 10-day record suspension for the second violation; a 20-day record suspension for the third violation; and dismissal for the fourth violation. *Id.* at 90. If an employee has three attendance-related violations plus one active

---

[1]The Attendance Guidelines are used as part of BNSF's Policy for Employee Performance Accountability ("PEPA"). *Id.* PEPA provides progressive levels of discipline, which a team reviews if an investigation and discipline could result in dismissal. *Id.* at 2.

Level S violation[2] within the previous three years, the employee is subject to dismissal. *Id.* It is undisputed that McIntire received a Level S Record Suspension for a safety violation that occurred on January 13, 2017. Undisputed Fact 5, ECF No. 45 at 14; Admitting Undisputed Fact 5, ECF No. 52 at 6; BNSF's MSJ App'x at 79, 80.

**B.     McIntire's History of FMLA Leave and Attendance Issues:  2016–2018**

In 2016, McIntire was diagnosed with diabetes.[3] Following his diagnosis, McIntire requested and was approved for intermittent FMLA leave. Undisputed Facts 2, 3, ECF No. 45 at 14; Admitting Undisputed Facts 2, 3, ECF No. 52 at 6. McIntire took several days of intermittent leave between May 2016 and May 2017. Undisputed Fact 4, ECF No. 45 at 14, Admitting Undisputed Fact 4, ECF No. 52 at 6. Those days were approved, and he was allowed to return to work after each of those absences. *Id.* After McIntire's intermittent FMLA leave expired in May 2017, he did not reapply for FMLA leave because he felt better and did not think he needed leave. Undisputed Fact 6, ECF No. 45 at 15; Admitting Undisputed Fact 6, ECF No. 52 at 6.

On August 29, 2017, McIntire received a formal reprimand for violating the Attendance Guidelines. Undisputed Fact 7, ECF No. 45 at 15; Admitting Undisputed Fact

---

[2]A Level S violation involves a BNSF employee who has violated PEPA with a "serious violation," which includes "any work rule or procedure that is intended to protect employees, the public and other from a potentially serious injury or fatality." BNSF's MSJ App'x at 4, 90.

[3]BNSF does not dispute that as a person diagnosed with diabetes, McIntire qualifies as an "eligible employee" with a "serious health condition" under the FMLA, BNSF's Resp. to MSJ at 2, ECF No. 50 ("Insofar as Plaintiff seeks summary judgment on the assertions that he was an eligible employee and had a 'serious health condition' under the FMLA, those elements of Plaintiff's claim are not in dispute."), and that McIntire is "disabled" under the Rehabilitation Act. *See id.* at 3 ("To the extent Plaintiff seeks summary judgment on the claim that he is disabled under the Rehabilitation Act, that point is not in dispute.").

7, ECF No. 52 at 6. On October 12, 2017, McIntire received a 10-day suspension for violating the Attendance Guidelines. Undisputed Fact 8, ECF No. 45 at 15; Admitting Undisputed Fact 8, ECF No. 52 at 6. On May 9, 2018, McIntire received a 20-day suspension for violating the Attendance Guidelines. Undisputed Fact 9, ECF No. 45 at 15; Admitting Undisputed Fact 9, ECF No. 52 at 6. McIntire never challenged these reprimands. Therefore, it is undisputed that in the 12 months preceding August 14, 2018, McIntire had received three formal Attendance Guidelines reprimands and he had an active Level S Record Suspension for a safety violation.

### C. McIntire's Undisputed August 14, 2018 Absence and the Fallout Leading to Termination

McIntire was absent on August 14, 2018. Undisputed Fact 10, ECF No. 45 at 15; Admitting Undisputed Fact 10, ECF No. 52 at 6. One of BNSF's Mechanical Foreman, Christopher Williamson testified that when McIntire called out, he told Williamson that he had a family emergency but provided no other reason for his absence. BNSF's MSJ App'x at 95. Indeed, Williamson testified that McIntire "never told [him] his reason for calling out on August 14, 2018 was related to a medical condition nor that it should have been covered by FMLA." *Id.* In his deposition, McIntire confirmed that he never told Williamson anything other than he had a family emergency:

> Q. So in this document Chris Williamson is reporting that what you told him was family emergency. You see that, correct?
>
> A. Yes.
>
> Q. And so that is, in fact, what you told him that day, isn't it, that you had a family emergency, correct?

4

A. Yes.

*Id.* at 107. Williamson's documented call notes from August 14, 2018 also confirm this account. *Id.* at 95, 97.

Yet McIntire contends that his blood sugar was high, and that when he called in he told Williamson that he was disoriented, dizzy, not safe for work, and that he had a family emergency. Pl.'s MSJ Resp. at 2; Pl.'s MSJ Resp. App'x at Ex. 1, ECF No. 53 at 34–35. McIntire testified that he did not tell his foreman on August 14 that his leave was coded for FMLA because it was not approved as of that date. Pl.'s MSJ Resp. App'x at 41. It is undisputed that McIntire returned to work the next day.

The parties agree that McIntire's 12-month rolling period for attendance-related violations would have renewed on August 30, 2018. Pl.'s Resp. at 2. They disagree about whether McIntire expected his FMLA notice to cover the August 14, 2018 absence. BNSF said he did not, but McIntire claims that his medical certification—which was submitted on August 16, 2018—provided a period of intermittent leave from August 2, 2018 through August 2, 2019. BNSF's MSJ App'x at 52, 58–62. A review of the "Notice of Intent to Take Paid/Unpaid FMLA Leave" form submitted by McIntire reveals that he did not fill out the blank for "Effective date of leave." BNSF's MSJ App'x at 52.

BNSF eventually approved McIntire for FMLA leave, but it was from August 16, 2018—the date of the request—through August 15, 2019. Pl.'s Resp. at 2. And the approval letter—dated August 27, 2018—contained the bold warning: "**If this is not the approval you were seeking, please work with your provider to have an updated medical certification document submitted to our team, or feel free to call should you**

**have a question.**" BNSF's MSJ App'x at 74. McIntire does not argue or set forth evidence that he contacted BNSF's employee services team and challenged that his leave should have been applied earlier. In fact, he testified that he never made such a request:

> Q. Did you ever -- after August 14th, did you ever go back to Chris Williamson and say, hey, I think that my August 14 layoff should have been coded as FMLA leave?
>
> A. No, because I knew at the time I wasn't approved yet for FMLA. That's why I couldn't use that code.
>
> Q. Okay. Did you ever go talk to anybody else and ask to have that -- any other foreman and ask to have that changed?
>
> A. No.

BNSF's MSJ App'x at 115–16. For its part, BNSF's Manager of Employee Services, Adam Price, testified that "[t]here is no record of Gavin McIntire contacting Employee Services to question the dates for which his 2018 intermittent FMLA leave was approved, nor is there a record that he made a request that his 2018 FMLA leave be applied retroactively to any date before August 16, 2018." *Id.* at 25–26.

In response to the August 14, 2018 absence, BNSF issued a disciplinary notice and set an investigation hearing for September 5, 2018.[4] BNSF's MSJ Resp. App'x at 7. However, due to McIntire's absence for approved leave, the investigation hearing was

---

[4] The investigation was conducted by David Moreno, BNSF's Superintendent of Field Ops, who testified that he reviewed various materials regarding McIntire. BNSF's MSJ App'x at 10. After reviewing McIntire's file, Moreno concluded that McIntire was in violation of Mechanical Safety Rule 28.14 for excessive absenteeism and that he had an active Level S 30 day record suspension, so Moreno recommended to the chief mechanical officer that McIntire be dismissed. *Id.* at 10–11. Moreno testified that his dismissal recommendation was based solely on McIntire's violation of the Attendance Guidelines and had nothing to do with McIntire's diabetes or request for FMLA leave. *Id.* at 11.

postponed until January 4, 2019. *Id.* at 10–11. On January 4, 2019, McIntire and a union representative attended McIntire's investigation hearing regarding McIntire's August 14, 2018 violation. BNSF's MSJ App'x at 11. The hearing afforded McIntire the opportunity to present and cross-examine witnesses, as well as introduce into the record information relevant to the investigation. *Id.* at 13. BNSF terminated McIntire's employment on January 18, 2019, as a result of McIntire's August 14, 2018 absence. *Id.* at 87.

## PROCEDURAL HISTORY

McIntire filed this civil action on February 26, 2019. ECF No. 1. He alleged claims (1) under the FMLA for denial of benefits, interference, and retaliation; and (2) under the Rehabilitation Act for discrimination, denial of reasonable accommodations, and retaliation. *Id.*

Pursuant to the Court's Order (ECF No. 43), the parties filed motions for summary judgment. BNSF filed a Motion for Summary Judgment (ECF No. 44), and McIntire filed a Motion for Partial Summary Judgment (ECF No. 47). Each side has filed responses (ECF Nos. 50, 52) and replies (ECF Nos. 54, 55). In his response, McIntire expressly withdrew his claims for retaliation under the FMLA and disability discrimination under the Rehabilitation Act. ECF No. 52 at 1. And although he did not withdraw his retaliation claim under the Rehabilitation Act, he did not brief the claim in response to BNSF's Motion for Summary Judgment, so the Court concludes that the claim is abandoned.[5] Thus,

---

[5]"When a plaintiff fails to defend a claim in response to . . . a summary judgment motion, the claim is deemed abandoned." *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2–3 (N.D. Tex. July 2, 2019) (citing *Black v. N. Panola Sch. Dist.*, 461

McIntire's only live claims remaining are for interference under the FMLA and for denial of a reasonable accommodation under the Rehabilitation Act. The motions for summary judgment are now ripe for review.

## LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine dispute as to any material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(c).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the nonmovant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250. When the parties cross-move

---

F.3d 584, 588 n.1 (5th Cir. 2006) (determining that the plaintiff abandoned his claim by failing to respond to the defendant's Supplement to Motion for Summary Judgment)).

for summary judgment, the court must review "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

## ANALYSIS

**A.   McIntire's FMLA claim for interference fails because his notice was not sufficient.**

To protect the prescriptive rights of eligible employees, the FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise," any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). "The FMLA does not define 'interference,' but Department of Labor regulations provide that interference includes refusing to authorize FMLA leave, restraining or discouraging FMLA leave, and retaliating against employees who exercise FMLA rights." *Forbes v. Unit Tex. Drilling, L.L.C.*, 526 F. App'x 376, 379 (5th Cir. 2013) (citing 29 C.F.R. § 825.220). Thus, to establish a prima facie FLMA interference claim, a plaintiff must show that: (1) he is an eligible employee; (2) the defendant is an employer; (3) he was entitled to FMLA leave; (4) he gave the defendant proper notice of his intention to take leave; and (5) the defendant denied him benefits to which he was entitled. *See Lindsey v. Bio-Med. Applications of La., L.L.C.*, No. 20-30289, 2021 WL 3613632, at *3 (5th Cir. Aug. 16, 2021); *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

McIntire alleges that his August 14, 2018 absence should have been covered by intermittent FMLA leave and BNSF's denial of such coverage interfered with his FMLA rights. Compl. at ¶ 23. McIntire's interference claim rests on the allegation that BNSF

9

was provided notice of his need for FMLA by his verbal notification on August 14, 2018 and his written request on August 16, 2018. Pl.'s Resp. at 6. BNSF challenges the notice element of McIntire's interference claim, contending that the August 14, 2018 phone call had nothing to do with FMLA leave and instead was because McIntire said he had a "family emergency." Def.'s MSJ Reply at 3.

The efficacy of a notice requesting FMLA leave is not contingent on magic words but the absence of magic words is balanced against the fact that employers are not required to be "clairvoyant." In *Lanier v. University of Texas Southwestern Medical Center*, the Fifth Circuit explored what constitutes proper notice under the FMLA and how the rights of employees and employers must be balanced in this regard:

> Although an employee need not use the phrase "FMLA leave," she must give notice that is sufficient to reasonably apprise her employer that her request to take time off could fall under the FMLA. This court does not apply categorical rules for the content of the notice; instead we focus on what is "practicable" based on the facts and circumstances of each individual. An employer may have a duty to inquire further if statements made by the employee warrant it, but the employer is not required to be clairvoyant.

527 F. App'x 312, 316 (5th Cir. 2013) (cleaned up).

FMLA regulations further clarify that a seasoned FMLA recipient is held to a higher standard when notifying his employer:

> When an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA—protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave. *Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act*.

10

29 C.F.R. § 825.303(b) (emphasis added). Relatedly, FMLA regulations require employees to comply with their employer's policies related to "usual and customary notice and procedural requirements for requesting leave," and "[i]f an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA—protected leave may be delayed or denied." *Id.* § 825.303(c).

The undisputed evidence demonstrates that McIntire's August 14, 2018 phone call was not sufficient notice under the FMLA. *First*, McIntire had previously sought and obtained intermittent FMLA leave in 2016 for diabetes:

> Q. How many times did you take FMLA leave while you were employed at BNSF?
>
> A. Back in 2016 when I was on it, I would not take a lot but I did take it.
>
> Q. Was that intermittently in 2016?
>
> A. Yes.
>
> Q. Other than 2016, did you apply for FMLA leave at any other time when you were working for BNSF?
>
> A. No. I did not reapply for it for 2017 because I was physically, medically feeling better and I didn't think I needed to be on it until '18 rolled around and it came back full force.
>
> Q. What was the FMLA leave for in 2016?
>
> A. Same thing, diabetes.
>
> Q. How did you go about requesting FMLA leave in 2016?
>
> A. I went through the proper channels and filled the forms and paperwork out and they approved me for it.

11

BNSF's MSJ App'x at 101–02. In other words, McIntire knew how the process worked. He testified that he had done it before and that he had even used the "proper channels" and approved forms.[6]

*Second*, the foreman, Christopher Williamson, testified that McIntire did not mention that the reason for his call out was diabetes (or some other medical condition). BNSF's MSJ App'x at 95. McIntire's deposition testimony confirmed Williamson's testimony:

> Q. So in this document Chris Williamson is reporting that what you told him was family emergency. You see that, correct?
>
> A. Yes.
>
> Q. And so that is, in fact, what you told him that day, isn't it, that you had a family emergency?
>
> A. Yes.
>
> Q. So you didn't tell him anything else, just family emergency, correct?
>
> A. Yes.
>
> Q. Okay.

*Id.* at 52. Even McIntire testified that the reason he did not use FMLA code when he called off was because he was not approved for FMLA. *Id.* at 116–17. While McIntire tried to

---

[6]McIntire's familiarity with BNSF's FMLA policy is unsurprising given the testimony of Adam Price, the Manager of BNSF's Employee Services Department, and the attached FMLA application packet that Mr. Price testified is available for BNSF employees to download from the employee portal website. BNSF's MSJ App'x at 23, 27–50. The packet provides incredibly detailed forms, instructions, and answers to frequently asked questions regarding FMLA and BNSF's FMLA policy. *Id.*

connect his "family emergency" explanation in the call to his later FMLA request, such information was not presented until after McIntire missed work on August 14, 2018.

In light of these facts and circumstances, the Court concludes that there were no unusual circumstances justifying McIntire's failure to comply with BNSF's FMLA request policies and that the August 14, 2018 phone call was insufficient for a seasoned FMLA recipient to reasonably apprise BNSF that McIntire was requesting FMLA leave. *See Lanier*, 527 F. App'x at 317 (affirming grant of summary judgment on employee's FMLA interference claim when the employee's "only request was to be relieved of on-call duty that night" and that employee "had taken FMLA leave in the past and was familiar with the proper way to request it").

McIntire's subsequent written request for FMLA leave does not change this conclusion. It is true McIntire requested FMLA leave on August 16, 2018, which BNSF granted in its August 27, 2018 letter. But the letter did not grant retroactive leave and instead approved McIntire for intermittent leave from August 16, 2018 through August 15, 2019. The letter gave McIntire an opportunity to challenge the leave that he had been granted if it was not the leave he was seeking, but McIntire never challenged the FMLA leave period. McIntire sets forth nothing to indicate unusual circumstances warranting departure from BNSF's usual and customary notice and procedure requirements. *See* 29 C.F.R. § 825.303(c).

Considering all of the facts and circumstances of this case, *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980–81 (5th Cir. 1998), the Court concludes that McIntire had a history of absenteeism in the 12 months preceding August 14, 2018, and that he was

13

under an active Level S violation at that time, that he knew how to request intermittent FMLA leave for diabetes because he had done it before, and that there were no unusual circumstances justifying McIntire's failure to comply with BNSF's FMLA leave-request policies in this instance, so his FMLA request *after* his fourth absence and after failing to use the proper channels "was either too little, or too late, or both." *Id.* at 982. And finally, to the extent the leave from August 16, 2018 through August 15, 2019 was not what McIntire was seeking, he was given the opportunity to say so, but he did not.

Therefore, the Court concludes that BNSF's Motion for Summary Judgment on McIntire's FMLA interference claim should be and hereby is **GRANTED.**

**B.    McIntire's Rehabilitation Act claim for reasonable accommodation fails because FMLA leave is not a request for a reasonable accommodation as a matter of law.**

The Rehabilitation Act prohibits discrimination against qualified individuals with disabilities who are employed by entities that receive federal funds. 29 U.S.C. § 794(a). "The [Rehabilitation Act] was enacted 'to ensure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or ignorance of others.'" *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1259 (5th Cir. 1988)). "The [Rehabilitation Act] and the [Americans with Disabilities Act] ADA are judged under the same legal standards, and the same remedies are available under both Acts[,]" *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010), so the "[j]urisprudence interpreting either section is applicable to both."

14

*Delano-Pyle*, 302 F.3d at 574.[7]  To succeed on a Rehabilitation Act claim for failure to provide a reasonable accommodation, a plaintiff must establish the following: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 323 (5th Cir. 2021) (Willett, J.).  In this Circuit, FMLA leave cannot constitute a reasonable accommodation because "an employee seeking FMLA leave is by nature arguing that he *cannot* perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he *can* perform the essential functions of the job." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791–92 (5th Cir. 2017) (Jones, J.).

McIntire's failure-to-accommodate claim is grounded on his FMLA request and BNSF's denial of it.  ECF No. 1 at ¶¶ 31–33.  BNSF challenges McIntire's failure-to-accommodate claim on the ground that McIntire admitted he never requested a reasonable accommodation and only made an FMLA leave request.  And because an FMLA leave request is not a reasonable accommodation as a matter of law, summary judgment should be granted on McIntire's reasonable accommodation claim.  BNSF's MSJ Br. at 14, ECF No. 45 at 19.

---

[7]The only exception to their common jurisprudence relates to causation. *Wilson v. City of Southlake*, 936 F.3d 326, 330 (5th Cir. 2019).  "The causation standard under Section 504 is 'solely by reason' of disability, whereas the ADA applies even if discrimination is not the "sole reason" for the challenged action." *Harrison v. Klein Indep. Sch. Dist.*, 856 F. App'x 480, 482 n.2 (5th Cir. 2021) (cleaned up).

The Court is bound by Fifth Circuit precedent, and in *Acker* the Fifth Circuit held that merely requesting FMLA leave is not a reasonable accommodation that will support a Rehabilitation Act claim. 853 F.3d at 791; *see also Trevino v. United Parcel Serv.*, No. 3:08-CV-0889-B, 2009 WL 3423039, at *12 (N.D. Tex. Oct. 23, 2009) (Boyle, J.) ("FMLA leave is not a reasonable accommodation under the ADA; rather, it is a right enforceable under a separate statutory provision.").

Here, McIntire conceded that he could not recall any accommodation he requested other than FMLA leave:

> Q. Okay. One of the allegations that you have made in this lawsuit is that you were denied a reasonable accommodation. What reasonable accommodation did you request from BNSF?
>
> A. I don't remember requesting anything. I didn't want this to lead down the road of termination. That's basically it.

BNSF's MSJ App'x at 119–20. In *Acker*, Judge Jones compared the FMLA to the ADA and recognized that "requesting FMLA leave alone is not a request for an ADA reasonable accommodation." 853 F.3d at 791. Thus, simply requesting FMLA leave without anything more will not support a failure-to-accommodate claim. *Cf. Willard v. Friendswood ISD*, No. 3:18-CV-00233, 2019 WL 2906294, at *3 (S.D. Tex. June 11, 2019) (recommending motion to dismiss be granted on retaliation claim when "[n]othing in the Complaint indicate[d] [the plaintiff] asked for any additional accommodation aside from taking FMLA leave"), *rep. & rec. adopted*, No. 3:18-CV-00233, 2019 WL 2905132 (S.D. Tex. July 5, 2019). Accordingly, McIntire's Rehabilitation Act claim fails.

But even if intermittent leave under the FMLA was not precluded as a reasonable accommodation as a matter of law, McIntire's claim would still not survive summary judgment because BNSF granted the requested accommodation. That is, it is undisputed that McIntire was granted intermittent leave from August 16, 2018 through August 15, 2019. And in so granting, BNSF gave McIntire a chance to object if it was not the accommodation he sought: "**If this is not the approval you were seeking, please work with your provider to have an updated medical certification document submitted to our team, or feel free to call should you have a question.**" BNSF's MSJ App'x at 74. But McIntire testified that he did not challenge the accommodation and seek to have it applied retroactively:

> Q. Did you ever -- after August 14th, did you ever go back to Chris Williamson and say, hey, I think that my August 14 layoff should have been coded as FMLA leave?
>
> A. No, because I knew at the time I wasn't approved yet for FMLA. That's why I couldn't use that code.
>
> Q. Okay. Did you ever go talk to anybody else and ask to have that -- any other foreman and ask to have that changed?
>
> A. No.

BNSF's MSJ App'x at 115–16. As explained above, McIntire was experienced with BNSF's FMLA policies and procedures, and he sets forth no justification for his failure to challenge the approved leave period.

Therefore, BNSF's Motion for Summary Judgment on McIntire's Rehabilitation Act claim for failure to accommodate should be and hereby is **GRANTED.**

## CONCLUSION

For the foregoing reasons, the Court finds that McIntire's Motion for Partial Summary Judgment should be and hereby is **DENIED**, BNSF's Motion for Summary Judgment should be and hereby is **GRANTED**, and McIntire's claims are **DISMISSED with prejudice**.

**SO ORDERED** on this **21st day** of **September, 2021**.

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE